# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 3, 2011

No. 09-50995

Lyle W. Cayce
Clerk

PERSONAL CARE PRODUCTS, INC., a Missouri Corporation, BRAD STATLER, an individual, and GARY WYANKO, an individual,

Plaintiffs – Appellants

v.

ALBERT HAWKINS, in his official capacity as Commissioner of the TEXAS HEALTH AND HUMAN SERVICES COMMISSION, a governmental entity of the State of Texas; RALPH C LONGMIRE, in his official capacity as Sanctions Manager of the Office of Inspector General, an agency within TEXAS HEALTH AND HUMAN SERVICES COMMISSION, a governmental entity of the State of Texas; TEXAS HEALTH AND HUMAN SERVICES COMMISSION, a governmental entity of the State of Texas; PAREATHA I. MADISON, in her official capacity as Sanctions Specialist of the Office of Inspector General, an agency within TEXAS HEALTH AND HUMAN SERVICES COMMISSION, a governmental entity of the State of Texas,

Defendants – Appellees

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, CLEMENT, and OWEN, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Personal Care Products, Inc. (PCP) furnishes incontinence supplies to Medicaid recipients in twelve states, including Texas. In the course of a Medicaid fraud investigation, the Texas Health and Human Services

No. 09-50995

Commission withheld reimbursements from PCP.  PCP filed suit against state officers, alleging civil rights violations under 42 U.S.C. § 1983 and seeking damages and injunctive relief.  The district court dismissed all claims, primarily on the grounds that PCP lacked a protected property interest in Medicaid payments withheld pending a fraud investigation.  We affirm.

I.

Medicaid providers agree to comply with federal and state laws that govern the program, including billing and documentation requirements.  However, state Medicaid agencies, such as the Texas Health and Human Services Commission, regularly overpay providers for services rendered because of incomplete paperwork, inadvertent errors, or fraud.  To reduce these excess expenditures, the federal Medicaid statute mandates that state programs "provide for procedures of prepayment and postpayment claims review . . . to ensure the proper and efficient payment of claims and management of the program."[1]  It also requires states to maintain a fraud control unit to manage the collection of overpayments.[2]  Serving as this unit, the Commission conducts audits of current providers and reviews reimbursement claims from years past to ensure proper payment.  Under Texas law, the Commission may recover all overpayments, regardless of the cause.[3]

---

[1] 42 U.S.C. § 1396a(a)(37).

[2] 42 U.S.C. § 1396b(q)(5).

[3] 1 Tex. Admin. Code § 371.1703 (allowing recovery of all overpayments "whether the overpayment resulted from error (by the provider, the claims administrator, or an operating agency), misunderstanding, or a program violation proven to result from fraud or abuse").

No. 09-50995

One way to assure the state recovers overpayments is for the agency to withhold current reimbursements, even legitimate ones, while investigating the old, erroneous payments.  Under federal regulations, a state Medicaid agency may withhold reimbursements "in whole or in part, . . . upon receipt of reliable evidence that the circumstances giving rise to the need for a withholding of payments involve fraud or willful misrepresentation."[4]  Accordingly, Texas's regulatory framework provides two avenues for recovering overpayments. First, "[w]hen no wrongdoing is established through investigation, the Inspector General may refer the matter for routine payment correction."[5]  However, when prima facie evidence of fraud is present, "[a] payment hold on payments of future claims submitted for reimbursement will be imposed."[6]  Further, a "payment hold may be imposed prior to completion of an investigation."[7]

## II.

On May 31, 2006, the Commission notified PCP that it was conducting a preliminary investigation of PCP's billing and had identified a potential overpayment for reimbursements issued for claims dating from January 1, 2004

---

[4] 42 C.F.R. § 455.23.  Federal regulations define "fraud" as "an intentional deception or mispresentation made by a person with the knowledge that the deception could result in some unauthorized benefit to himself or some other person."  42 C.F.R. § 455.2.

[5] 1 Tex. Admin. Code § 371.1701.

[6] 1 Tex. Admin. Code § 371.1703.  Under this Texas regulation, a payment hold may also be imposed for any number of program violations listed in § 371.1617, which appear to include items that could at times be inadvertent filing mistakes, such as billing for an item that required prior authorization.  PCP does not contend that these regulations are inconsistent with federal law.

[7] 1 Tex. Admin. Code § 371.1703.

No. 09-50995

to December 31, 2005.  The notice included allegations that PCP submitted false statements to obtain compensation greater than the amount that PCP was legally entitled.  Further, the notice included a spreadsheet specifying the services reviewed and the violation associated with each service.  As a result of the prima facie evidence of fraud, the Commission stated it would withhold all Medicaid payments to PCP until the investigation was complete.

PCP timely sought a hearing to contest the payment hold, but it could not contest the merits of the fraud allegations or the overpayment amount until that amount became final.[8]  After informal negotiations, the hold was lifted in August 2006, allowing a $600,000 payment to PCP for its pending Medicaid claims.  In October 2006, the Commission notified PCP of a potential overpayment of approximately $4 million, plus an administrative penalty of an additional $4 million.  PCP requested an informal review and expedited appeal but was denied because there were no new sanctions imposed.[9]  Later that month, the Commission instituted a 25% payment hold, in part because PCP refused to provide a security interest to assure the Commission that PCP was acting in good faith.[10]  PCP requested a hearing to challenge this payment hold, but the

---

[8] *See* 1 Tex. Admin. Code § 371.1647 ("In the case of recoupment [of overpayment], a statement of the provider's or person's right to request a formal appeal hearing of the potential sanction is not provided in the initial notice letter, since this is not a final sanction.  A statement of the provider's or person's right to request a formal appeal hearing of the final sanction will be subsequently provided with the final written notice of the Inspector General's final overpayment determination.").

[9] At that time, the Commission had not imposed a payment hold, and PCP could not challenge the fraud or $4 million overpayment because the amount had not been finalized.

[10] *See* Tex. Hum. Res. Code § 32.0321(a) (allowing the Commission to require a provider to file a surety bond if the Commission identifies a pattern of suspected fraud or abuse involving criminal conduct).

No. 09-50995

parties could not agree upon a date.  In September 2007, PCP filed this lawsuit; the Commission subsequently terminated the payment hold and released $350,000 that had accumulated from the October 2006 hold.  A few days later, the Commission issued a notice of final sanctions for a $1.15 million overpayment and an administrative penalty of $2.3 million.  When the overpayment amount was finalized, PCP had the right to a formal hearing on the merits of the overpayment and fraud.[11]

In its lawsuit, PCP claimed the Commission denied it due process and tried to coerce settlement of the alleged Medicaid overpayment.  The district court dismissed the case, concluding that PCP did not have a protected property interest in the reimbursement payments.  PCP timely appealed.

III.

We review *de novo* a grant of motion to dismiss, viewing the facts pleaded in the complaint in the light most favorable to the plaintiff.[12]  To survive a motion to dismiss, the plaintiff must state a "plausible claim for relief."[13]  If the well-pleaded facts, accepted as true, do not suggest unlawful conduct, a plaintiff's complaint must be dismissed.[14]

Our question here is whether PCP has a property right in its Medicaid reimbursements, even those withheld pending a fraud investigation.  A property

---

[11] *See* 1 Tex. Admin. Code §§ 371.1647(d)(5), 371.1667.

[12] *See, e.g.*, *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009); *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).

[13] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

[14] *Id.*

interest requires "more than a unilateral expectation" of a benefit.[15]  Instead, a person must "have a legitimate claim of entitlement to it."[16]  Property interests "are not created by the Constitution.   Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."[17]

Nothing in Texas or federal law extends a property right in Medicaid reimbursements to a provider that is the subject of a fraud investigation.  PCP admits that it may not have property rights in Medicaid reimbursements that are under investigation, but, PCP asserts, it does have a property interest in legitimately earned, current reimbursements that are not subject to investigation.  In other words, since the payments actually withheld were not under investigation, the Commission was not entitled, so the argument goes, to withhold those payments while investigating past payments for fraud. PCP may be correct in that the federal regulations do not make clear whether a state agency can withhold legitimate payments while investigating previously paid fraudulent claims—the regulations simply allow payment holds.[18]  However,

---

[15] *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972).

[16] *Id.*

[17] *Id.*; *see also Yorktown Med. Lab. v. Perales*, 948 F.2d 84, 89 (2d Cir. 1991) ("Property interests in Medicaid payment . . . must derive from federal or state law.").

[18] *See* 42 C.F.R. § 455.23 (allowing payment holds when the need arises because of fraud or willful misrepresentation but not indicating which funds may be withheld).  Like our colleagues on the Fourth Circuit, we note the complexities of these statutes and regulations, which no doubt create compliance and enforcement problems for both providers and regulators alike.  *See Rehab. Ass'n of Va., Inc. v. Kozlowski*, 42 F.3d 1444, 1450 (4th Cir. 1994) ("There can be no doubt that the statutes and provisions in question, involving the financing of

No. 09-50995

Texas regulations plainly permit current reimbursements to be withheld pending investigation on prior payments, noting that "payments for *future* claims" may be withheld and stating that payment holds are "used to withhold payments to providers that may be used subsequently to offset the overpayment or penalty amount when [an] investigation is complete."[19]  Federal law does not prohibit these payment holds and state law explicitly allows them.   The statutory scheme does not give PCP a property interest in its present reimbursement claims while past claims are under investigation for fraud.[20]

IV.

The Commission's investigation of PCP found prima facie evidence of fraud.   Texas law gave PCP no claim of entitlement to its Medicaid reimbursements pending the outcome of the fraud investigation.  The judgment below is AFFIRMED.

---

Medicare and Medicaid, are among the most completely impenetrable texts within human experience.  Indeed, one approaches them at the level of specificity herein demanded with dread . . . .").

[19] 1 Tex. Admin. Code § 371.1703 (emphasis added).

[20] *See Yorktown*, 948 F.2d at 89 (finding that a provider has no property interest grounded in federal or New York law "to payment for claims pending investigation to determine illegality"); *see also id.* ("[The state agency], however, may not withhold payment indefinitely without some findings as to unacceptable practices. [The agency], in effect, may only refuse to pay for services 'for cause.'"); 42 C.F.R. § 455.23 (requiring that payment holds cease when the agency determines there is insufficient evidence of fraud or when legal proceedings related to the provider's alleged fraud are completed).