# NO. 12-16-00108-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *TROY W. SIMMONS, D.D.S., P.C. AND* <br> *TROY W. SIMMONS, D.D.S.,* <br> *APPELLANTS* | § | *APPEAL FROM THE 124TH* |
| *V.* | | |
| *CHARLES SMITH, EXECUTIVE* <br> *COMMISSIONER OF THE TEXAS* <br> *HEALTH AND HUMAN SERVICES* <br> *COMMISSION, IN HIS OFFICIAL* <br> *CAPACITY,* | § | *JUDICIAL DISTRICT COURT* |
| *APPELLEE* | § | *GREGG COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Troy W. Simmons, D.D.S., P.C. and Troy W. Simmons, D.D.S. (collectively Simmons) appeal the trial court's order granting the plea to the jurisdiction filed by Charles Smith, Executive Commissioner of the Texas Health and Human Services Commission, in his official capacity.[1]  In two issues, Simmons contends the trial court erred in granting Smith's plea to the jurisdiction and Smith failed to exhaust his administrative remedies.  We affirm.

## BACKGROUND

In October 2012, the Texas Health and Human Services Commission Office of Inspector General (OIG) notified Simmons that it had determined Simmons committed program violations in the Medicaid program.  Because OIG's investigation uncovered a credible allegation of fraud, OIG placed a hold on Medicaid reimbursement payments to Simmons.  Simmons contested the

---

[1] This appeal was originally filed in the name of the predecessor to the current Executive Commissioner. We have substituted the current holder of that office.  *See* TEX. R. APP. P. 7.2(a).

payment hold. Pursuant to a "Request to Docket Case" dated June 24, 2013, the hearing on the payment hold was set for February 24, 2014.

However, in April 2013, OIG sent a "Notice of Potential Overpayment" to which Simmons responded with a request for a contested case hearing. In November 2013, OIG sent Simmons a "Final Notice of Overpayment." In December 2013, OIG filed a motion to dismiss the "Payment Hold" action as moot because Simmons did not appeal the final sanctions identified in the "Final Notice of Overpayment." On January 7, 2014, the administrative law judge (ALJ) denied the motion to dismiss.

On February 5, 2014, OIG applied the money subject to the payment hold toward the amount OIG determined Simmons owed and filed a notice that the payment hold had been lifted. Two weeks later, citing "the parties' concurrence about the absence of a need for a hearing on the merits," the ALJ cancelled the scheduled hearing and remanded the matter to the Health and Human Services Commission "to take final administrative action about its dispute" with Simmons.

Subsequently, Simmons filed a declaratory judgment action against the Texas Health and Human Services Commission requesting the trial court declare that his alleged liability had been extinguished and the funds held pursuant to the payment hold should be forwarded to him. The trial court dismissed the suit. On appeal, this court agreed that the trial court properly determined that it lacked jurisdiction because the Commission is immune from suit.[2]

Thereafter, Simmons filed the instant suit against the Executive Commissioner of the Texas Health and Human Services Commission in his official capacity. In this suit, he seeks a declaration that his alleged liability has been released and that funds retained by the Commissioner as a consequence of the payment hold should be released and forwarded to him. The Commissioner filed a plea to the jurisdiction, which the trial court granted. Simmons appealed the trial court's order of dismissal.

## PLEA TO THE JURISDICTION

In his first issue, Simmons contends that the trial court erred in granting the Commissioner's plea to the jurisdiction. He contends that, by retaining the funds, the

---

[2] *Simmons v. Tex. Health & Human Servs. Comm'n*, No. 12-14-00256-CV, 2015 WL 851888 (Tex. App.−Tyler Feb. 27, 2015, pet. denied) (mem. op.).

2

Commissioner acted outside his statutory authority and failed to perform a ministerial act. Therefore, his acts are ultra vires and an exception to the doctrine of sovereign immunity.

**Standard of Review**

Absent a waiver of sovereign immunity, a state entity cannot be sued. *See* ***Tex. Dep't of Parks & Wildlife v. Miranda***, 133 S.W.3d 217, 224 (Tex. 2004). Sovereign immunity from suit defeats a trial court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. ***Id***. at 225-26. A plea questioning the trial court's jurisdiction raises a question of law that we review de novo. ***Id***. at 226. In reviewing a plea to the jurisdiction, we review the pleadings and any evidence relevant to the jurisdictional issue. ***Tex. Dep't of Crim. Justice v. Miller***, 51 S.W.3d 583, 587 (Tex. 2001). The plaintiff has the burden of alleging facts sufficient to demonstrate the trial court's jurisdiction. ***Miranda***, 133 S.W.3d at 226. If the pleadings illustrate incurable defects in jurisdiction, a plea to the jurisdiction is properly granted. ***Id***. at 226-27.

The Declaratory Judgment Act (DJA) does not extend a trial court's jurisdiction, and a litigant's request for declaratory relief does not confer jurisdiction on a court or change a suit's underlying nature. ***Tex. Nat. Res. Conservation Comm'n v. IT-Davy***, 74 S.W.3d 849, 855 (Tex. 2002). Thus, the DJA does not waive the state's sovereign immunity when the plaintiff seeks a declaration of his rights under a statute or other law. ***Tex. Dep't of Transp. v. Sefzik***, 355 S.W.3d 618, 621 (Tex. 2011) (per curiam). The underlying action must be one for which immunity has expressly been waived. ***Id***. at 623.

Suits against government officials alleging that they "acted without legal authority or failed to perform a purely ministerial act" and seeking to compel the officials "to comply with statutory or constitutional provisions" fall within the "ultra vires" exception to sovereign immunity because they "do not attempt to exert control over the state − they attempt to reassert the control of the state." ***City of El Paso v. Heinrich***, 284 S.W.3d 366, 372 (Tex. 2009). Thus, sovereign immunity protects government officers who are acting consistently with the law. ***Id***.; *see also* ***Houston Belt & Terminal Ry. Co. v. City of Houston***, 487 S.W.3d 154, 164 (Tex. 2016). To determine whether a party has asserted a valid ultra vires claim, we construe the relevant statutory provisions, apply them to the facts alleged, and determine whether those facts constitute acts beyond the official's authority or establish a failure to perform a purely ministerial act. ***Tex. Dep't of Transp. v. Sunset Transp., Inc.***, 357 S.W.3d 691, 701-02 (Tex. App.−Austin

2011, no pet.).  An agency's interpretation of its own rules is entitled to great weight and deference.  ***Combs v. City of Webster***, 311 S.W.3d 85, 97 (Tex. App.–Austin 2009, pet. denied).

**Applicable Law**

The Texas Health and Human Services Commission administers the Texas Medicaid program.  *See* TEX. HUMAN RES. CODE ANN. § 32.021(a) (West Supp. 2016).  The Executive Commissioner supervises the administration and operation of Medicaid and monitors the effective use of all federal funds received for the health and human services system.  TEX. GOV'T CODE ANN. §§ 531.0055(b)(1), (3), 531.021 (West Supp. 2016).  The Commission's Office of Inspector General (OIG) is responsible for the investigation of Medicaid fraud and the enforcement of state law relating to the provision of the Medicaid program.  TEX. GOV'T CODE ANN. § 531.102(a) (West Supp. 2016); *see also* 1 TEX. ADMIN. CODE § 371.1721 (2005) (Tex. Health & Human Servs. Comm'n), *repealed by* 37 TEX. REG. 7,989, 7,999 (2012) (OIG may assess administrative damages and penalties against a provider who knew or should have known submitted claims were false.).  If OIG obtains "reliable evidence" of fraud, it "shall impose without prior notice a hold on payment of claims for reimbursement submitted by" the provider under investigation.  Act of May 28, 2011, 82d Leg., R.S., ch. 879, § 3.11, 2011 Tex. Gen. Laws 2227, 2233 (amended 2013) (current version at TEX. GOV'T CODE ANN. § 531.102(g)(2) (West Supp. 2016)); *see also* 1 TEX. ADMIN. CODE § 371.1709(b) (2012) (Tex. Health & Human Servs. Comm'n), *amended* 2014, 2015, 41 TEX. REG. 2941 (2016) (codified as an amendment to 1 TEX. ADMIN. CODE § 371.1709 (2016)) (OIG imposes a payment hold against a person upon receipt of reliable evidence that verifies a credible allegation of fraud.).[3]  The provider may request an administrative hearing regarding the hold.  Act of June 2, 2003, 78th Leg., R.S., ch. 198, § 2.19(a), 2003 Tex. Gen. Laws 611, 652 (amended 2013) (current version at TEX. GOV'T CODE ANN. § 531.102(g)(3) (West Supp. 2016)).  A payment hold may be terminated if all proceedings against the provider, including any appeals and judicial review, have been exhausted and all overpayments and other reimbursements are satisfied.  1 TEX. ADMIN. CODE § 371.1709(e)(3)(J).  After a payment hold is terminated, OIG may retain the funds accumulated during the payment hold to offset any overpayment.  1 TEX. ADMIN. CODE § 371.1709(e)(2).

OIG is authorized to recover overpayments made to providers.  1 TEX. ADMIN. CODE § 371.1711 (2012) (Tex. Health & Human Servs. Comm'n), *amended by* 2014, 2015, 41 TEX.

---

[3] Unless otherwise noted, citations are to the 2012 version of the administrative rules.

REG. 2941 (2016) (codified as an amendment to 1 TEX. ADMIN. CODE § 371.1711 (2016)). When it proposes to recoup overpayments, it gives written notice of its intent by sending a notice of potential overpayment. *Id*. § 371.1711(c)(1). A person may request an informal review after receipt of a notice of potential recoupment. *Id*. § 371.1711(d)(1). When OIG has determined the amount of the final overpayment, it sends its final notice of overpayment. *Id*. § 371.1711(c)(2). The provider may request an administrative appeal hearing after receipt of a final notice of recoupment of overpayment. *Id*. § 371.1711(d)(3). The sanction becomes final upon expiration of thirty days after receipt of the notice of a final sanction if no timely request for appeal of imposition of the sanction is received by OIG. *Id*. § 371.1711(e); 1 TEX. ADMIN. CODE § 371.1617(a)(1) (2012) (Tex. Health & Human Servs. Comm'n), *amended* 2014, 41 TEX. REG. 2941 (2016) (codified as an amendment to 1 TEX. ADMIN. CODE § 371.1617 (2016)).

**Analysis**

Because the DJA is not a general waiver of sovereign immunity, Simmons was required to invoke the court's jurisdiction by alleging unconstitutional or ultra vires action. ***Creedmoor-Maha Water Supply Corp. v. Tex. Comm'n on Envtl. Quality***, 307 S.W.3d 505, 515 (Tex. App.−Austin 2010, no pet.).

*Constitutional Rights*

Simmons asserted, without explanation, that the Commissioner's actions violated equal protection and due process rights guaranteed to him by the United States and Texas constitutions. He did not allege that he was being treated differently from others with whom he was similarly situated. Therefore, he failed to plead a viable equal protection claim. *See **City of Paris v. Abbott***, 360 S.W.3d 567, 583 (Tex. App.−Texarkana 2011, pet. denied). Additionally, Simmons failed to plead facts asserting a liberty or property interest entitling him to due process protection. *See **Creedmoor-Maha Water Supply Corp.***, 307 S.W.3d at 525; *see also **Pers. Care Prods., Inc. v. Hawkins***, 635 F.3d 155, 159 (5th Cir. 2011) (Texas law gives no property right in Medicaid reimbursements to a provider that is the subject of a fraud investigation.). Therefore, Simmons has not invoked the trial court's jurisdiction by any constitutional claim.

*Ultra Vires Action*

Simmons alleged that, by retaining funds sequestered by the payment hold, the Commissioner acted without legal authority and failed to perform a purely ministerial act of returning the funds. Based on construction of the relevant rules, we disagree.

As required by law, OIG imposed a payment hold based on evidence of Simmons's fraudulent activity. *See* Act of May 28, 2011, 82d Leg., R.S., ch. 879, § 3.11, 2011 Tex. Gen. Laws 2227, 2233 (amended 2013). OIG sent the appropriate notice to Simmons regarding the payment hold. The Commissioner agrees that Simmons exercised his right to contest the payment hold. OIG filed a request to docket the payment hold case, and it was set for a hearing with the State Office of Administrative Hearings (SOAH). Before the hearing on the payment hold, OIG sent a notice of potential overpayment. Instead of requesting the informal review allowed under the rules, Simmons requested "a contested case hearing to adjudicate the pending issues and allegations pursuant to the applicable provisions of the Texas Administrative Procedures Act." A contested case hearing at this juncture is not contemplated by the rules. *See* 1 TEX. ADMIN. CODE § 371.1711(d)(1).

A few months later, OIG sent its Final Notice of Overpayment informing Simmons that the investigation was complete and it determined that he received an overpayment in the amount of $2,609,436.00. The notice stated that, "[t]o appeal this final sanction, [Simmons] must file a written request for appeal which must be received by [OIG] . . . no later than the 15th calendar day after the date of receipt of this notice." The notice further explained that the letter requesting an appeal hearing must contain a statement as to the specific issues, findings, and/or legal authority in the notice letter with which Simmons disagrees, and the basis for his contention that the specific issues or findings and conclusions are incorrect. Additionally, the notice included the warning, in bold capital letters, that this sanction will become final and unappealable upon the expiration of fifteen calendar days after receipt of the notice of final sanction if no timely request for appeal has been received by OIG. The notice also warned that the effect of this determination becoming final creates a final debt in favor of the State of Texas.

OIG moved to dismiss the payment hold action asserting that it is moot in light of Simmons's failure to appeal the final sanctions identified in the Final Notice of Overpayment. In its Order No. 5, the ALJ denied that motion. The ALJ reasoned that Simmons's request for a hearing sent pursuant to the Notice of Potential Overpayment was sufficient to comply with Commission Rule 371.1711(d)(3) and thus he requested an appeal. Here, Simmons relies on that finding in support of his argument. However, this is not an appeal of the ALJ's orders. The construction, accuracy, or effect of those orders is not before us. As explained below, our

6

independent review of the rules and statutes involved lead us to a different conclusion regarding whether Simmons appealed the final sanctions.[4]

Rule 371.1711(d)(3) specifies that a person may request an administrative appeal hearing after receipt of a final notice of recoupment in accordance with Section 371.1615. ***Id***. § 371.1711(d)(3). The referenced rule speaks to "[a] person who receives a final notice of a sanction" and requires that OIG must receive a written request for an administrative contested case hearing no later than the fifteenth day after the date the person receives the final notice of sanction. 1 TEX. ADMIN. CODE § 371.1615(a) (2012) (Tex. Health & Human Servs. Comm'n), *amended* 2014, 2015, 41 TEX. REG. 2941 (2016).[5] It also requires, as stated in OIG's notice to Simmons, a written request for an administrative contested case hearing to include a statement as to the specific issues, findings, and/or legal authority in the notice letter with which the person disagrees and to state the basis for the person's contention that the specific issues or findings and conclusions of OIG are incorrect. 1 TEX. ADMIN. CODE § 371.1615(b)(3), (4).

Here, Simmons's request was in response to the Notice of Potential Overpayment. It was not in response to a final sanction. There is no indication in the rule that a person's request for an appeal of a sanction can be sent before that person is sanctioned, although the Commission could adopt such a rule if it saw fit to do so. *See, e.g.,* TEX. R. APP. P. 27.1(a) (providing that, in a civil case, a prematurely filed notice of appeal is effective and deemed filed on the day of, but after, the event that begins the period for perfecting the appeal). Furthermore, Simmons's request for a contested case hearing did not include any of the detail required by the rule. Accordingly, Simmons did not comply with the Commission rules that would entitle him to a contested hearing on the final overpayment sanction. *See **Shamrock Psychiatric Clinic, P.A. v.***

---

[4] We note, however, that nothing in Order No. 5 required OIG to take any action. Further, in Order No. 10, the ALJ cancelled the scheduled hearing on the merits and remanded the matter for the Commission to take final administrative action about its dispute with Simmons. The order did not specify a particular action OIG was required to take. The record does not indicate what actions OIG took after the ALJ issued Order No. 10, other than defend against the lawsuits filed by Simmons. Moreover, the legislature authorized agencies to change an ALJ's finding of fact or conclusion of law, or to vacate an ALJ's order, in certain circumstances. *See* TEX. GOV'T CODE ANN. § 2001.058(e) (West 2016). Nonetheless, the ALJ's orders did not create a duty to return the sequestered funds and the Commissioner did not commit an ultra vires act as a result of his response to Orders No. 5 and 10.

[5] Effective September 1, 2013, a provider has thirty days after the date he is notified that OIG will seek to recover an overpayment to request an appeal. TEX. GOV'T CODE ANN. § 531.1201(a) (West Supp. 2016). Although the Final Notice of Overpayment was sent after the effective date of the amendment, this change does not affect our analysis as Simmons did not request an appeal after OIG's final notice of overpayment.

***Tex. Health & Human Servs. Comm'n***, No. 03-15-00349-CV, 2016 WL 4269977, *6 (Tex. App.–Austin Aug. 10, 2016, no pet.) (mem. op., not designated for publication).

Accordingly, because Simmons did not request a contested hearing before SOAH, the final notice of overpayment became final. 1 TEX. ADMIN. CODE §§ 371.1617(a)(1), 371.1711(e). Because all proceedings against Simmons had been exhausted, OIG was authorized to terminate the payment hold. 1 TEX. ADMIN. CODE § 371.1709(e)(3)(J). Section 371.1709 authorizes OIG to retain the funds accumulated during the payment hold to offset any overpayment. 1 TEX. ADMIN. CODE § 371.1709(e)(2). To conclude that OIG had to return the money once the payment hold was lifted would be inconsistent with Section 371.1709(e)(2)'s authorization to retain the funds. We conclude that OIG did not make its determination to keep the money in a way the law does not allow. *See **Houston Belt & Terminal Ry. Co***., 487 S.W.3d at 163-64.

The Commissioner was under no ministerial duty to return the sequestered funds, and he acted within his legal authority by retaining the funds and applying them to the overpayment owed by Simmons. Accordingly, Simmons did not plead an ultra vires act by the Commissioner. *See **Heinrich***, 284 S.W.3d at 372. The trial court did not err in granting the Commissioner's plea to the jurisdiction. *See **Miranda***, 133 S.W.3d at 226-27. We overrule Simmons's first issue.[6]

#### DISPOSITION

Because the Commissioner is entitled to immunity, we ***affirm*** the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered October 31, 2016.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

---

[6] Because we have overruled Simmons's first issue, we do not address his second issue concerning whether the Commissioner failed to exhaust his administrative remedies. *See* TEX. R. APP. P. 47.1.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### OCTOBER 31, 2016

### NO. 12-16-00108-CV

**TROY W. SIMMONS, D.D.S., P.C. AND TROY W. SIMMONS, D.D.S.,**
Appellants
V.
**CHARLES SMITH, EXECUTIVE COMMISSIONER OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION, IN HIS OFFICIAL CAPACITY,**
Appellee

Appeal from the 124th District Court
of Gregg County, Texas (Tr.Ct.No. 2015-1329-B)

THIS CAUSE came to be heard on the oral arguments, appellate record, and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellants, **TROY W. SIMMONS, D.D.S., P.C. and TROY W. SIMMONS, D.D.S.**, for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*