# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CC-00960-COA

**NSCH RURAL HEALTH CLINIC**  APPELLANT

**v.**

**DREW SNYDER, IN HIS OFFICIAL CAPACITY**  APPELLEES
**AS EXECUTIVE DIRECTOR OF THE DIVISION**
**OF MEDICAID, AND THE DIVISION OF**
**MEDICAID, OFFICE OF THE GOVERNOR,**
**STATE OF MISSISSIPPI**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/06/2019 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| COURT FROM WHICH APPEALED | HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | CRANE D. KIPP GRAFTON ERIC BRAGG |
| ATTORNEYS FOR APPELLEES: | JANET McMURTRAY SAMUEL PHILIP GOFF |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 10/06/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WILSON, P.J., LAWRENCE AND McCARTY, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1. On October 10, 2017, NSCH Rural Health Clinic (North Sunflower) requested an administrative hearing after the Mississippi Division of Medicaid (DOM) suspended reimbursement payments for medical and dental services provided to Medicaid beneficiaries. The services were suspended as a result of an ongoing investigation of potential fraud. The DOM approved the administrative hearing but limited its scope to the sole issue of whether good cause existed to **not** suspend or partially suspend such payments. On January 24, 2018,

the hearing officer issued a recommendation to affirm the suspension of reimbursement payments to North Sunflower. The DOM's executive director adopted the hearing officer's recommendation on February 9, 2018. North Sunflower appealed the DOM's decision to the Hinds County Chancery Court.

¶2. On June 6, 2019, the chancery court entered its final judgment, dismissing North Sunflower's appeal and affirming the DOM's decision. Aggrieved by the chancery court's decision, North Sunflower appealed. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. North Sunflower was a rural health care provider located in Ruleville, Mississippi, which provided medical, dental, vision, and mental health care services to Medicaid beneficiaries throughout the Mississippi Delta. North Sunflower's clinic provided a wide spectrum of services, offered extended hours of operation to the community, and accepted walk-in patients. In conjunction with the clinic, North Sunflower also offered two offsite outreach programs that provided services to surrounding communities for their medical and dental needs. These outreach programs included (1) a dental outreach program that provided dental services to nursing home residents at their respective facilities and (2) a school-outreach program that provided "early and periodic screening and diagnostic treatment" (EPSDT) as well as inoculations in schools and head-start program facilities throughout the delta. Both dental and vision screenings were offered through the school-outreach program. In 2012, the DOM approved the outreach programs to receive reimbursements for services provided to Medicaid beneficiaries at the offsite locations.

2

¶4.    In 2017, the DOM received notice of allegations of fraud within North Sunflower's dental outreach program and more specifically, fraudulent billing under the primary code for dental evaluations of nursing home patients.[1]  Pursuant to state and federal regulations, the DOM referred the allegations of fraud to the Medicaid Fraud Control Unit (MFCU) at the Mississippi Attorney General's Office for further criminal investigation.  Around that same time, the DOM received notice of additional allegations of fraud within North Sunflower's school outreach program.  On August 30, 2017, the DOM sent a letter to North Sunflower providing notice that Medicaid reimbursements for the dental outreach program were being suspended pending the results of the criminal investigation.  On September 8, 2017, the DOM sent North Sunflower an additional letter stating that it was suspending **all** Medicaid reimbursements including reimbursements to the dental outreach program, the school-outreach program, and the Ruleville clinic.

¶5.    On October 10, 2017, North Sunflower requested an administrative hearing regarding the suspension.  On October 25, 2017, the DOM approved North Sunflower's request for an administrative hearing; however, the scope of the hearing was limited to a determination if there was good cause to lift or limit the suspension.  23 Miss. Admin. Code Pt. 305, R. 1.2(E) (adopted Nov. 1, 2016).  No testimony or evidence was allowed pertaining to the substantive facts regarding the credibility of the underlying allegations of fraud that led to the suspension.

¶6.    On November 16, 2017, an administrative hearing took place before hearing officer

---

[1] "D0140" was the primary code for nursing home patient's dental evaluations.

3

James Bell. At the administrative hearing, North Sunflower was given the opportunity to present evidence to support its position that good cause existed to lift or limit the imposed suspension. North Sunflower argued that the continued implementation of the suspension would have an adverse effect on Medicaid beneficiaries' access to necessary medical and dental services that North Sunflower previously provided. Further, North Sunflower attempted to offer evidence regarding the lack of credibility of the initial allegations of fraud; however, after objection, it was not allowed to do so. Within its brief, North Sunflower alleged that "though it had not been confirmed," the company suspected that a former employee was responsible for fraudulent billing and that her actions were potentially the basis for the suspension. North Sunflower claimed that the fraudulent billing took place without its knowledge or consent. But this evidence was not allowed or considered at the administrative hearing. The DOM provided testimony that there would be no adverse effect on Medicaid beneficiaries as a result of the suspension because there were alternate medical and dental providers that offered the same types of services offered by North Sunflower. After the administrative hearing, on December 11, 2017, the DOM lifted the suspension as to the Ruleville clinic only. On January 24, 2018, hearing officer Bell issued his recommendation to affirm the remaining suspension of reimbursement payments to North Sunflower's dental outreach program and school outreach program. On February 9, 2018, the executive director of the DOM adopted the hearing officer's recommendation and affirmed the remaining suspensions.

¶7. On April 3, 2018, North Sunflower filed its notice of appeal in the Hinds County

4

Chancery Court. After oral and written argument from North Sunflower and the DOM, on June 6, 2019, the chancery court entered its final judgment of dismissal, which affirmed the DOM's decision and dismissed all of North Sunflower's claims. North Sunflower appealed.

## STANDARD OF REVIEW

¶8.     "In reviewing decisions of administrative agencies, this court will entertain the appeal only to determine: whether or not the order of the administrative agency (1) was unsupported by substantial evidence, (2) was arbitrary and capricious, (3) was beyond the power of administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party," *Elec. Data Sys. Corp. v. Miss. Div. of Medicaid*, 853 So. 2d 1192, 1202 (¶30) (Miss. 2013) (citing *Mainstream Sav. & Loan Ass'n v. Washington Fed. Sav. & Loan Ass'n*, 325 So. 2d 902, 903 (Miss. 1976)). "In administrative matters, the agency, and not the reviewing court, sits as the finder of fact." *Ross v. State*, 286 So. 3d 673, 676 (¶5) (Miss. Ct. App. 2019) (quoting *Pub. Emps.' Ret. Sys. v. Cobb*, 839 So. 2d 605, 609 (¶12) (Miss. Ct. App. 2003)). "The reviewing court may not substitute its judgment for that of the administrative agency, or reweigh the evidence." *Id*. The rebuttable presumption favors the final result reached by the agency, the challenging party has the burden to prove otherwise. *Ross v. Epps*, 922 So. 2d 847, 849 (¶4) (Miss. Ct. App. 2006) (citing *State Bd. of Pub. Acct. v. Gray*, 674 So. 2d 1251, 1253 (Miss. 1996)).

## ANALYSIS

¶9.     North Sunflower alleged that the suspension imposed by the DOM was not supported by substantial evidence, was arbitrary or capricious, exceeded the DOM's authority, and

5

violated North Sunflower's constitutional rights. More specifically, North Sunflower alleged that the DOM failed to introduce evidence of any credible allegation of fraud and that North Sunflower was entitled to an administrative hearing to challenge the sufficiency of the allegation. North Sunflower also alleged that the DOM wrongfully determined that it lacked good cause to lift the suspension of reimbursement payments in the midst of the investigation process.

## I.     Credible Allegation of Fraud

¶10.    North Sunflower alleged that apart from the general allegation of fraud set forth in the DOM's initial notice letter on August 30, 2017, there were no further details disclosed regarding the allegation that led to the Medicaid reimbursement suspension. At the administrative hearing, North Sunflower attempted to introduce evidence to rebut the purported allegations of fraud. However, the objections of the DOM were sustained, and no testimony or evidence was allowed. This appellate record is devoid of any specific details concerning the initial fraud allegation that resulted in the reimbursement suspension. North Sunflower argued that pursuant to federal and state regulations, it was entitled to an administrative hearing on the credibility and sufficiency of the initial allegation of fraud.[2] Further, North Sunflower alleges that even if the federal and state regulations did not provide an avenue for administrative review of the fraud allegation, it should be afforded appellate review consistent with caselaw. To that end, North Sunflower asserts in it's brief that "[w]here there is no provision for appeal, . . . the chancery court has jurisdiction for judicial

---

[2] 42 C.F.R. § 455.23(a)(3) (2012); 23 Miss. Admin. Code Pt. 300, R. 1.1(A)-(B) (amended Oct. 1, 2016).

review of the actions of such board or agency." *Charter Med. Corp. v. Miss. Health Planning & Dev. Agency*, 362 So. 2d 180, 181 (Miss. 1978). North Sunflower asserts that the MFCU's criminal investigation concerning the allegations of fraud does not constitute an adequate remedy at law and that the DOM's decision to make the referral to the MFCU was subject to judicial review.

¶11. Neither party disputes that the DOM made its referral to the MFCU after receiving the allegation of fraud against North Sunflower. Throughout the entirety of the administrative hearing process and the appeal process, the MFCU was simultaneously conducting an ongoing investigation concerning the allegations.

¶12. Federal regulations provide for the implementation of certain steps when a State Medicaid agency is confronted with fraud allegations. Pursuant to 42 C.F.R. § 455.23(a), when presented with a credible allegation of fraud, a State Medicaid agency must take the following action:

> (1) The State Medicaid agency **must** suspend all Medicaid payments to a provider after the agency determines there is a credible allegation of fraud for which an investigation is pending under the Medicaid program against an individual or entity unless the agency has good cause to not suspend payments or to suspend payment only in part. (2) The State Medicaid agency may suspend payments without first notifying the provider of its intention to such payments. (3) **A provider may request, and must be granted, administrative review where State law so requires**.

(Emphasis added). Further, pursuant to 42 C.F.R. § 455.23(b)(2), the DOM was required to give North Sunflower notice of the suspension as follows:

> The notice must include or address all of the following: (i) State that payments are being suspended in accordance with this provision. (ii) Set forth the **general allegations** as to the nature of the suspension action, **but need not**

7

**disclose any specific information concerning an ongoing investigation**, (iii) State that the suspension is for a temporary period, as stated in paragraph (c) of this section, and cite the circumstances under which the suspension will be terminated, (iv) Specify, when applicable, to which type or types of Medicaid claims or business units of a provider suspension is effective, (v) Inform the provider of the right to submit written evidence for consideration by State Medicaid agency, and (vi) Set forth the applicable State administrative appeals process and corresponding citations to State law.

(Emphasis added). Finally, pursuant to 42 C.F.R. § 455.23(d)(1), "Whenever a State Medicaid agency investigation leads to the initiation of a payment suspension in whole or part, the State Medicaid Agency **must** make a fraud referral to either of the following: (i) To a Medicaid fraud control unit established and certified under part 1007 of this title . . . ." (Emphasis added).

¶13. Mississippi state regulations provide almost identical parameters that expound upon the federal regulations regarding the fraud investigation process. Title 23 of the Mississippi Administrative Code Part 305, Rule 1.2(B)-(C) states in part:

> The Division of Medicaid **must** make a formal, written fraud referral to the Medicaid Fraud Control Unit (MFCU) for each credible allegation of fraud or an allegation that leads to the initiation of a payment suspension, in whole or in part. . . . The Division of Medicaid **must suspend all payments** to a provider when the Division of Medicaid determines there is a credible allegation of fraud for which an investigation is pending unless the Division determines that good cause exists to not suspend or partially suspend such payments. . . ."

(Emphasis added). Mississippi Code Annotated section 43-13-219 (Rev. 2015) created the MFCU to function through the Mississippi Attorney General's Office, with its role more specifically described in Mississippi Code Annotated section 43-13- 221 (Rev. 2015). "The Attorney General, acting through the director of the Fraud Control Unit, may, in any case

8

involving alleged violations of this article, conduct an investigation or prosecution." *Id*.

This section bestows the power to issue subpoenas, make arrests and execute search warrants

unto to employees of the Attorney General's Office working in the MFCU. Title 23 of the

Mississippi Administrative Code Part 305, Rule 1.2(E) state, "The Division of Medicaid may

grant an administrative hearing, if requested by the provider, as described in Miss. Admin.

Code Part 300, **to determine whether or not good cause exists to remove a payment**

**suspension or suspend payment only in part**." (Emphasis added). Title 23 of the

Mississippi Administrative Code Part 300, Rule 1.1(A) provides in part that

> [a]dministrative hearings shall be available to providers of services participating in the Mississippi Medicaid program. These hearings are for providers who are dissatisfied with a decision of the Division of Medicaid relating to disallowances, **withholdings of funds**, refusals in the renewal of a provider agreement, terminations of provider agreements, suspensions of provider participation or matters relating to payment rates or reimbursement if not previously considered by the Division of Medicaid under Public Notice or Public Hearing Procedures.

(Emphasis added).

¶14. In this case, the fraud allegations were referred to the Medicaid fraud unit at the

Mississippi Attorney General's Office. Further, there is no authority within the relevant

federal or state regulations that requires the DOM to provide an administrative hearing

concerning the sufficiency of the initial allegations of fraud or to disclose any specific

information regarding the fraud allegations under investigation. Pursuant to 42 C.F.R.

§ 455.23(b)(2), the DOM was required to give North Sunflower notice of the suspension to

include **only** general allegations but not to disclose any specific allegations concerning the

ongoing investigation. The regulation's obvious goal was to protect the integrity and

9

confidentiality of an ongoing criminal investigation. To hold otherwise could potentially undermine the ongoing criminal investigation being conducted by the Attorney General's Office. Pursuant to both federal and state regulations, the DOM referred the allegations of fraud to the MFCU, gave North Sunflower the appropriate notice, and suspended reimbursements pending the outcome of that investigation. North Sunflower's assertion that the DOM's actual decision to refer the allegations of fraud was subject to judicial review is without merit. Given the fact that both federal and state regulations mandated the DOM's referral of the allegations to the MFCU, its actions in that regard were certainly within the parameters set forth in the law.

¶15. North Sunflower asserted a due-process violation as a result of being denied the opportunity to challenge the credibility of the underlying fraud allegations. It has been previously established that pursuant to federal and state regulations the DOM had no obligation to provide North Sunflower with an administrative hearing specifically regarding the credibility of the fraud allegations. But, it did have an obligation to grant administrative review of the continued suspension of payments where state law requires. Pursuant to 23 Mississippi Administrative Code Part 305, Rule 1.2(E), state law required that North Sunflower be provided with an administrative hearing to determine if good cause existed to lift or limit the payment suspension. North Sunflower was granted a "good cause" hearing. North Sunflower appeared at the hearing with counsel and presented its argument regarding good cause to lift the suspension, thereby defeating a due process claim. The hearing officer affirmed the suspension of payments as did the DOM. North Sunflower then appealed to the

10

Hinds County Chancery court and provided written briefs and engaged in oral arguments. The Chancellor affirmed the decision of DOM and dismissed the appeal. That entire process hardly sounds of due process violations.

¶16. Further, North Sunflower lacked a recognized property interest to support a violation of a due-process claim of deprivation of liberty or property. "Property interests, of course are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Nothing within the federal or state regulations entitled North Sunflower to Medicaid reimbursement payments during a pending fraud investigation. Specifically, 23 Mississippi Administrative Code Part 305, Rule 1.2(B) required: "The Division of Medicaid **must** suspend **all** payments to a provider when the Division of Medicaid determines there is a credible allegation of fraud for which an investigation is pending . . . ." (Emphasis added). In *Personal Care Products Inc. v. Hawkins*, 635 F.3d 155, 159 (5th Cir. 2011), the United States Court of Appeals for the Fifth Circuit stated:

> Nothing in Texas or federal law extends a property right in Medicaid reimbursements that are under investigation . . . . Federal law does not prohibit these payment holds and state law explicitly allows them. The statutory scheme does not give PCP a property interest in its present reimbursement claims while past claims are under investigation for fraud.

In this case, nothing within the federal regulations prohibited the suspension of Medicaid reimbursement payments during an ongoing investigation of fraud, and the Mississippi

11

regulations specifically mandated suspension of all payments. Therefore, the DOM's refusal of an administrative hearing on the credibility of the initial fraud allegation did not constitute a violation of due process. Further, the suspension of Medicaid reimbursement payments was mandated by 42 C.F.R. § 455.23(a)(1).

¶17. Finally, North Sunflower relies on *Charter Medical Corp. v. Mississippi Health Planning and Development Agency*, 362 So. 2d 180, 182 (Miss. 1978), which states, "Where there is no provision for appeal and injured parties do not have a full, plain, complete and adequate remedy at law, the chancery court has jurisdiction for judicial review of the actions of such board or agency." However, *Charter* is not applicable here. In this case North Sunflower had a full, plain, complete, and adequate remedy of law pursuant to state regulations outlined above. State regulations mandated referral to the MFCU upon receiving a credible allegation of fraud, and upon accepting the referral, the Attorney General's Office could initiate a criminal investigation. Further, State regulations mandated the suspension of Medicaid reimbursement payments as a result of the referral and investigation. Finally, state regulations provided for an administrative hearing limited to whether good cause could be proved to lift or limit the suspension. All of these steps were taken in the current case. Therefore, we find no error in the chancery court's decision regarding the denial of North Sunflower's request for a hearing regarding the credibility of the initial allegation of fraud.

## II. "Good Cause" Determination

¶18. North Sunflower also asserted that good cause existed to lift the suspension of Medicaid reimbursements imposed by the DOM. North Sunflower alleged that it was the

12

sole source of essential specialized services in the community by virtue of its extended hours of operation and acceptance of walk-in patients at the Ruleville clinic and unique dental and school outreach programs. North Sunflower further alleged that the suspension should be lifted due to its service to beneficiaries within a Health Resources and Services Administration (HRSA)-designated "medically underserved" area.

¶19. Both federal and state regulations allow the DOM to lift a suspension of Medicaid reimbursement payments upon a showing of good cause. The Mississippi Administrative Code provides as follows:

> C. The Division of Medicaid must suspend all payments to a provider when the Division of Medicaid determines there is a credible allegation of fraud for which an investigation is pending **unless the Division of Medicaid determines that good cause exists not to suspend** or partially suspend payments or not to continue a payment suspension previously imposed including but not limited to . . . (2) [t]he Division of Medicaid determining . . . (c) [a] payment suspension would have an adverse effect on beneficiary access to necessary items or services because either of the following is true: (1) An individual or entity is the sole community physician or the sole source of essential specialized services in a community, or (2) The individual or entity serves a large number of beneficiaries within a Health Resources and Services Administration (HRSA) designated medically underserved area.
>
> . . . .
>
> E. The Division of Medicaid may grant an administrative hearing, if requested by the provider, as described in Miss. Admin. Code Part 300, to determine whether or not good cause exists to remove a payment suspension or suspend payment only in part.

23 Miss. Admin. Code Pt. 305, R. 1.2(C) & (E) (emphasis added).

¶20. The DOM's program integrity director, Alwin Dockins, testified that the DOM evaluated and considered the factors set forth in 23 Mississippi Administrative Code Part

305, Rule 1.2(C) and determined that there was not sufficient evidence in this case to justify lifting the suspension. Pursuant to 23 Mississippi Administrative Code, Part 305, Rule 1.2(C)(1), Dockins testified that he ran multiple reports to identify the existence of other providers in the area that offered the same services provided by North Sunflower. Dockins testified that he reviewed the specific counties and cities where North Sunflower was offering its dental and school outreach program to determine if the Medicaid beneficiaries in those areas would be deprived of those services if the suspension was not lifted. There is nothing "specialized" about the types of services that North Sunflower provided through its outreach programs. The services provided through those programs included routine dental evaluations, screening and inoculations. Dockins ultimately determined that North Sunflower was not the sole provider of those services, and moreover there were Medicaid dentists all over the state to accommodate those Medicaid beneficiaries.

¶21. Further, Dockins testified that pursuant to 23 Mississippi Administrative Code Part 305, Rule 1.2(C)(2), the DOM considered the fact that North Sunflower provided services in an area that the HRSA designated as "medically underserved." However, the majority of Mississippi has a "medically underserved" HRSA designation. The DOM acknowledged that the HRSA designation was a factor in determining whether good cause existed but was only one factor. Furthermore, if the HRSA designation was the only factor to be considered, the DOM would never be able to suspend a payment for any provider upon a credible allegation of fraud due to the fact that the majority of Mississippi falls into that category.

¶22. Finally, after considering beneficiary access to comparable medical and dental

treatment and North Sunflower's HRSA "medically underserved" designation, the DOM determined that it lacked good cause to lift or limit the imposed suspension. More specifically, there was no adverse effect on beneficiary access to necessary items or services as a result of the suspension. The DOM's determination that there was not good cause to lift the suspension is supported by substantial evidence and is not arbitrary or capricious.

## CONCLUSION

¶23. The DOM's decision not to lift the suspension of reimbursement payments was not arbitrary nor capricious. Further, we find that the DOM acted within its power to deny North Sunflower's request for an administrative hearing on the credibility of the initial allegation of fraud and to continue the suspension of reimbursements. Finally, we find that the actions of the DOM did not violate any statutory or constitutional rights afforded to North Sunflower. Accordingly, we affirm the chancery court's judgment.

¶24. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE AND McCARTY, JJ., CONCUR. WESTBROOKS AND McDONALD, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

15