# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Spring 2024 Term

_____

No. 23-ICA-11
No. 23-ICA-39

_____

**FILED**

**June 12, 2024**

released at 3:00 p.m.
ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

SAMANTHA BURGESS, ALYSSA SKEENS, GEORGE GROVER,
JESSICA HALSTEAD, and SUNSHINE HOLSTEIN,
Petitioners Below, Petitioners,

v.

WEST VIRGINIA DEPARTMENT OF HUMAN SERVICES,
BUREAU FOR MEDICAL SERVICES,
Respondent Below, Respondent.

And

HOLISTIC, INC.,
Petitioner Below, Petitioner,

v.

WEST VIRGINIA DEPARTMENT OF HUMAN SERVICES,
BUREAU FOR MEDICAL SERVICES,
Defendant Below, Respondent.

_____

Appeal from the West Virginia Department of Human Services,
Bureau for Medical Services

AFFIRMED, in part, and REMANDED, in part, with INSTRUCTIONS
_____

Submitted:  February 7, 2024
Filed:  June 12, 2024

William D. Wilmoth, Esq.
Justin M. Wilson, Esq.
Steptoe & Johnson, PLLC
Wheeling, West Virginia
Counsel for Individual Petitioners

J. Zak Ritchie, Esq.
Isaac R. Forman, Esq.
Skyler A. Matthews, Esq.
Hissam Forman Donovan Ritchie PLLC
Charleston, West Virginia
Counsel for Petitioner, Holistic

Patrick Morrisey, Esq.
Attorney General
Brent Wolfinbarger, Esq.
Senior Deputy Attorney General
Gary L. Michels, Esq.
Assistant Attorney General
Michael R. Williams, Esq.
Principal Deputy Solicitor General
Spencer J. Davenport, Esq.
Assistant Solicitor General
Charleston, West Virginia
Counsel for Respondent

JUDGE GREEAR delivered the Opinion of the Court.
CHIEF JUDGE SCARR concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

GREEAR, JUDGE:

Petitioners Samantha Burgess, Alyssa Skeens, George Grover, Jessica Halstead, Sunshine Holstein, ("Individual Petitioners") and Holistic, Inc. ("Holistic")[1] (collectively referred to as "Petitioners") appeal the December 7, 2022, decision of the West Virginia Department of Human Services[2] ("DHS"), Bureau for Medical Services ("BMS") denying Petitioners' request to rescind or suspend, in whole or in part, the suspension of all Medicaid payments to Holistic and the Individual Petitioners pending completion of a fraud investigation by the Medicaid Fraud Control Unit ("MFCU"). On appeal, Petitioners argue that BMS' decision to suspend Medicaid payments was arbitrary and capricious in that BMS did not consider whether good cause existed, under 42 C.F.R. § 455.23(e), to not suspend said payments, in whole or in part. Further, Petitioners allege that BMS acted arbitrarily and capriciously in failing to provide "adequate specific detail of the allegations in its pre-suspension notices" to Petitioners.

---

[1] By order dated January 19, 2024, this Court, on its own motion, consolidated the appeal filed collectively by the Individual Petitioners (Case No. 23-ICA-11) with the appeal filed by Holistic (Case No. 23-ICA-39) for argument, consideration, and decision.

[2] Pursuant to West Virginia Code § 5F-2-1a (2024), the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. That agency is now three separate agencies: the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* West Virginia Code § 5F-1-2. The West Virginia Department of Health and Human Resources, Bureau for Medical Services is now known as the Department of Human Services, Bureau for Medical Services.

After our review of the record and consideration of the oral and written arguments of counsel, we find no merit in Petitioners' claims. Here, Petitioners received adequate notice of the suspension of their Medicaid payments, as required under 42 C.F.R. § 455.23(b). We also find no error in BMS' discretionary determination that good cause did not exist for the lifting of the suspension of Petitioners' Medicaid payments, in whole or in part, except as to Individual Petitioner Sunshine Holstein. As expressly noted by BMS in its Supplemental Brief to this Court, "MFCU's investigation [of Holistic and the Individual Petitioners] did not yield sufficient evidence to warrant pursuing civil remedies against Sunshine Holstein." BMS therein noted its plan to restore Ms. Holstein's "ability to bill Medicaid." To the extent that such action has not already been taken by BMS, we hereby direct BMS to lift its suspension of Ms. Holstein's Medicaid payments forthwith. Accordingly, we affirm BMS' December 7, 2022, decision, and remand this matter for further proceedings only as it pertains to the lifting of the suspension of Medicaid payments of Sunshine Holstein.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

We begin our factual recitation with a brief discussion of the Medicaid program in West Virginia and the general processes in that program for identifying, investigating, and, if necessary, prosecuting Medicaid fraud or abuse. Authorized under Title XIX of the Social Security Act, Medicaid is an entitlement program financed by the state and federal governments and administered individually by each state. *See* 42 U.S.C. § 1396-1. In *Forloine v. Persily*, No. CV 3:23-0450, 2024 WL 1316237, at *1 (S.D.W. Va.

Mar. 27, 2024) (memorandum decision), the United States District Court for the Southern District of West Virginia described Medicaid as a "cooperative federal-state program." *See Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606, 610 (2012). Thus, in exchange for federal funds, states agree to follow "congressionally imposed conditions" in the Medicaid program. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 323 (2015).

In West Virginia, BMS is the agency responsible for administering the Medicaid program. *See Your Guide to Medicaid 2023*, effective April 1, 2023, at page 2.[3] It is the mission statement of BMS to, in part, administer the Medicaid program, "while maintaining accountability for the use of resources, in a way that assures access to appropriate, medically necessary, and quality health care services for all members." *Id.*

Within BMS is the Office of Program Integrity ("OPI"). The OPI was formed in July of 1995, as a result of funding by the West Virginia Legislature, to monitor the utilization of Medicaid services in West Virginia to ensure compliance with federal Medicaid requirements. In that regard, OPI conducts post-payment reviews and is responsible for identifying potential fraud, waste, and abuse cases. OPI uses a combination of processes to identify potential fraud cases, including referrals, data analysis, and data

---

[3] The West Virginia Legislature has identified BMS as the "State Medicaid agency" charged with administration and supervision of the state Medicaid program. *See* West Virginia Code § 9-1-2 (2024).

3

mining (which uses algorithms that sort Medicaid claims data for further review and identifies program outliers).

OPI's functions also include oversight of the Medicaid Managed Care Special Investigation Unit ("SIU"), which is tasked with managing policies and procedures for Medicaid Managed Care Organizations ("MCO") to detect and deter fraud, waste, and abuse in the Medicaid program. The SIU must notify OPI of all incidents of fraud, waste, and abuse it discovers, and must work with BMS and MFCU to administer effective prevention, detection, and resolution of fraud, waste, and abuse.

For the purpose of investigating and further controlling fraud and abuse in medical programs in West Virginia, the West Virginia Legislature created the MFCU (previously established within the West Virginia DHS, but now part of the West Virginia Office of the Attorney General). As to the necessity for MFCU, in West Virginia Code § 9-7-1 (2019), the Legislature expressly stated the following:

> It is the finding of the Legislature that substantial sums of money have been lost to the state and federal government in the operation of the medical programs of the state due to the overpayment of moneys to medical providers. Such overpayments have been the result of both the abuse of and fraud in the reimbursement process.

West Virginia's MFCU has the responsibility for the investigation and referral for prosecution of all violations of applicable state and federal laws pertaining to

4

the provision of goods or services under the medical programs of the state, including the Medicaid program. MFCU receives referrals from BMS.

We now turn our attention to the specific facts relevant to our analysis of the instant case. In 2018, Holistic, a company that provided primary medical care, counseling services (including substance abuse counseling), and medically assisted treatment for substance use disorder, operated two facilities in Kanawha County, West Virginia.[4] As part of its services, Holistic had an in-house laboratory where it processed urine drug tests and pregnancy tests. In July of 2018, Holistic entered into a contract with UniCare (a West Virginia Medicaid MCO) to accept payments for medical services provided to West Virginia Medicaid recipients.

In 2018-2019, as a result of data mining, Holistic was identified by the SIU as an outlier for Medicaid billing and was found to have "aberrant billing practices that appeared to be unjustifiable based upon normal business practices." These practices include "high" billing of several current procedural terminology ("CPT") codes.[5] As part of SIU's investigation,

---

[4] Holistic was incorporated in West Virginia on January 4, 2018, and opened for business in West Virginia in April of 2018.

[5] CPT codes have been used for more than fifty years and have been described as the "primary medical language to communicate across health care." CPT codes provide a "uniform nomenclature for coding medical procedures and services." CPT Codes,

5

[e]ight, (8) medical records [of Holistic patients] with eight hundred and sixty two, (862) dates of services were reviewed. The results of the review found a potential overutilization, and/or unbundling of CPT codes 80307, 81025, 82075, 99212, 99213, 99214, 99401, 99402, 99406 and 99407.[6] The data show[ed] a consistent trend of billing patients [for] a drug screen test, ([CPT] 80307)[;] alcohol breath screen test, ([CPT] 82075)[;] E & M [established medical patient office visits] ([CPT] 99213, 99214)[;] preventive medicine counseling ([CPT] 99401, 99402)[;] and tobacco cessation counseling ([CPT] 99406, 99407). The codes [were] repeated weekly for these eight patients. In addition, there appears to be a trend of high daily volume for time-based codes and potential for impossible day billing. The data show[ed] a consistent pattern of billing timed preventative medicine counseling codes, with tobacco use cessation codes and obesity screening/weight loss counseling. These codes represent a unit of time and must be documented showing that time. In all of the [eight] records reviewed with the dates of service for these specific codes, there is no time documented[,] and the provider lists the dates on a common template sheet.

In September of 2019, an SIU investigator conducted a telephone interview with Holistic's president, Shawn Blankenship.[7] During this interview, Mr. Blankenship

American Medical Association Catalog of Topics, http://ama-assn.org/topics/cpt-codes (last visited June 10, 2024).

[6] CPT code 80307 is presumptive drug screening test; CPT code 81025 is urine pregnancy test; CPT code 82075 is alcohol breath test; CPT code 99212 is established patient office or other outpatient visit of 10-19 minutes; CPT code 99213 is established patient office or other outpatient visit of 20-29 minutes; CPT code 99214 is established patient office or other outpatient visit of 30-39 minutes; CPT code 99401 is preventive medicine counseling of approximately 15 minutes; CPT code 99402 is preventive medicine counseling of approximately 30 minutes; CPT code 99406 is smoking cessation counseling from 3-10 minutes; and CPT 99407 is smoking cessation counseling in excess of 10 minutes.

[7] Mr. Blankenship is a nurse practitioner and co-incorporator of Holistic, along with his wife Julie Blankenship, who serves as the vice president and business manager of

was asked questions regarding Holistic's counseling staff, billing of CPT codes 81025 and 82075 for urine drug screens and pregnancy tests (including billing for pregnancy tests for several women who had no possibility of pregnancy), medical record keeping (specific to CPT codes 99401, 99402, 99406, and 99407), and Holistic's relationship with Dr. Ghali Ibrahim-Bacha.[8] The SIU investigator's findings were contained in a Report of Investigation Case Summary that identified several instances of fraud and/or abuse committed by Petitioners, which were reported to BMS on January 24, 2020. Thereafter, on March 23, 2020, BMS referred the matter, via a Medicaid Fraud Referral Form ("Form"), to MFCU. In the Factual Explanation of the Allegation part of the Form, BMS noted:

> [t]he provider [Holistic] was identified as an outlier for utilizing high level [E/M] services in the UniCare market, specifically CPT codes (99213, 99214). As well as CPT codes, alcohol breath, (82075), preventative medicine counseling, (99401, 99402), smoking/tobacco cessation counseling, (99406, 99407), and presumptive drug screening, 80307.

The Form further classified the referral as "a credible allegation of fraud" referral. Credible allegation of fraud is defined in 42 C.F.R. § 455.2 as ". . . an allegation,

---

Holistic. The record reflects that Mr. Blankenship provided all records and documentation requested by the SIU during its investigation and that he "fully cooperat[ed] with the government's inquiry."

[8] Dr. Bacha was identified as a medical director of Holistic. During his SIU interview, Mr. Blankenship stated that Dr. Bacha does not see patients at Holistic but comes into Holistic's office once a week to review and authorize records. Mr. Blankenship had no explanation as to how Holistic's billing records (submitted for payment through Medicaid) indicated that Dr. Bacha saw forty (40) patients at Holistic, other than simply claiming a billing error.

which has been verified by the State from any source, including . . . (2) [c]laims data mining." By letter dated May 2, 2022, BMS notified Holistic that BMS intended to

> suspend [Medicaid] payments to Holistic, Inc. in whole effective May 16, 2022. This suspension applies to all of your Medicaid claims and the entirety of the organization(s). Federal law requires that Medicaid payments be suspended pending the investigation of a "credible allegation of fraud" against any individual or entity, unless the state determines that there is good cause not to suspend payments. 42 U.S.C. § 1396b(i)(2)(C); 42 C.F.R §§ 455.2, 455.23. This suspension is due to an ongoing investigation by the West Virginia [MFCU].

Further, the letter stated:

> [p]ursuant to federal law, the suspension of payments based on a credible allegation of fraud is temporary and will end upon the determination that there is insufficient evidence of fraud, or on the completion of legal proceeding(s) related to the alleged fraud by Holistic, Inc. 42 C.F.R. § 455.23(c)(1).

Similar letters were sent that same day from BMS to the Individual Petitioners, for whom Holistic had billed services, notifying each of them that their Medicaid payments would also be suspended on May 16, 2022. In response to the May 2, 2022, letter, counsel for Holistic, via a May 3, 2022, e-mail and a May 6, 2022, letter, requested an administrative hearing and additional information regarding the specific findings against Petitioners. BMS responded to the e-mail from Holistic's counsel via e-mail on May 4, 2022, which acknowledged receipt of the May 3, 2022, e-mail and indicated that a response would be forthcoming, "as soon as possible."

8

By letter dated May 16, 2022, BMS again wrote to Holistic to advise that suspension of Medicaid payments, in whole, would become effective on May 23, 2022. The May 16, 2022, letter contained the same language as the May 2, 2022, letter (cited above), but with the addition of two sentences, which indicated that

> BMS reviewed all good cause exceptions to payment suspension allowed by statute and determined none are applicable in this instance.  .  . This investigation concerns allegations of knowingly billing for services never rendered.[9]

On May 19, 2022, Holistic filed a Verified Petition for Writ of Prohibition in the Circuit Court of Kanawha County seeking an order prohibiting BMS from implementing the suspension of Medicaid payments.[10] A joinder of the Individual Petitioners in the petition for writ of prohibition was filed on May 20, 2022. In response to Petitioners' petition, BMS provided copies of both the SIU Report of Investigation Case Summary and the Medicaid Fraud Referral Form and noted that the suspension of

---

[9] The record does not contain a copy of a second letter sent by BMS to the Individual Petitioners extending the deadline for suspension of Medicaid payments and indicating that no good cause existed to stop suspension of payments, similar to the May 16, 2022, letter sent to Holistic. While no letters to the Individual Petitioners dated May 16, 2022, are contained in the record, the record does reflect that Medicaid payments for the Individual Petitioners were not suspended until May 23, 2022, the extended deadline set forth in the May 16, 2022, letter. Further, during the oral arguments held before this Court, counsel for the Individual Petitioners made reference to two letters received from BMS regarding the suspension of Medicaid payments.

[10] That case was styled *Holistic, Inc. v. West Virginia Department of Health and Human Resources, Bureau for Medical Services*, Civil Action No. 22-P-184 and was assigned to Judge Louis H. Bloom.

9

Petitioners' Medicaid payments was proper under federal law. By Final Order dated July 7, 2022, the writ of prohibition was denied. Specifically, the circuit court determined that a writ of prohibition was inappropriate as Petitioners had "another adequate remedy in the form of an administrative appeal," and, further, those Petitioners "failed to demonstrate any legal error committed" by BMS.

Despite their filing of the writ of prohibition, Petitioners appeal of the BMS suspension of their Medicaid payments continued without delay and, on July 1, 2022, an expedited Document/Desk Review ("DDR") Decision was completed by General Counsel for BMS. This DDR Decision upheld suspension of Medicaid payments to all Petitioners effective May 23, 2022, noting the finding of a credible allegation of fraud against Petitioners and no good cause for exception to the payment suspension requirement, in whole or in part, found.

Petitioners appealed the DDR Decision and requested an administrative hearing, which was held before Hearing Examiner Lewis Brewer on August 18, 2022. By decision dated September 7, 2022, the hearing examiner found no error on the part of BMS. Specifically, he noted that by "accepting federal appropriations [BMS] has assented to the conditions imposed by applicable federal laws, rule and regulations." Further, he found that "[w]here there is a credible allegation of fraud, [BMS] is required to suspend Medicaid payments, unless one of the 'good cause' exceptions in 42 C.F.R. § 455.23 is found to exist." Here, the hearing examiner determined that "Petitioners failed to demonstrate that

10

[BMS'] determination that a credible allegation of fraud existed in this matter resulted from arbitrary and capricious decision making." As to good cause, the hearing examiner concluded that determination of good cause is left to the discretion of the state. Additionally, he found that Petitioners had no constitutional right to receive Medicaid payments and that nothing in the applicable state and federal law entitled Petitioners to Medicaid payments during a pending fraud investigation. By letter dated December 7, 2022, BMS accepted, without modification, the hearing examiner's September 7, 2022, recommended decision.

In January and early February of 2023, Petitioners filed their underlying appeals before this Court, challenging BMS' December 7, 2022, decision. Thereafter, on May 17, 2023, Holistic filed in the Circuit Court of Kanawha County a Petition for Writ of Certiorari seeking additional and similar relief from BMS' order suspending their Medicaid payments.[11] A hearing was held before the circuit court on August 30, 2023. By order entered September 6, 2023, the circuit court gave BMS sixty days from the date of the August 30, 2023, hearing to provide Petitioners the claims and dollar amounts for all alleged fraudulent activity. Once those dollar amounts were identified, BMS was ordered to pay the outstanding balance of Petitioners' Medicaid payments that were not under

---

[11] The Petition for Writ of Certiorari filed by Petitioners below was filed in the existing case of *Holistic, Inc. v. West Virginia Department of Health and Human Resources, Bureau for Medical Services*, Civil Action No. 22-P-184 and remained assigned to Judge Louis H. Bloom.

11

investigation, less the amount being investigated. As to the remainder of the issues raised by Holistic in its Petition for Writ of Certiorari, the circuit court held those issues in abeyance pending resolution of the appeal before this Court.

In late November of 2023, results of a Federal Bureau of Investigation ("FBI") investigation[12] revealed that Holistic allegedly submitted Medicaid claims for drug testing services purportedly rendered on dates when no patients or staff were present at the Holistic facility where the service supposedly occurred. Holistic was further believed to have "broken up" services rendered on a given day and billed those services as though they were provided on different days purportedly because of an assumption that this would improve the probability of reimbursement. Additionally, billing records were allegedly submitted by Holistic for October 24-31, 2020, while the employees who purportedly performed the services were on a retreat in Hilton Head, South Carolina, and not seeing patients. It was also alleged that Holistic billed seemingly fraudulent pregnancy testing (given to women who were incapable of being pregnant).

In December of 2023, Holistic filed a Motion for Contempt against BMS in the Writ of Certiorari case pending in circuit court for its failure to abide by the circuit

---

[12] The results of the FBI investigation were revealed following a November 30, 2023, order by United States Magistrate Judge Dwane L. Tinsley, directing the United States Attorney to provide redacted copies of search warrant affidavits to Mr. Blankenship, related to the underlying claims of Medicaid fraud in the United States District Court for the Southern District of West Virginia in Charleston.

court's September 6, 2023, order. On January 10, 2024, the circuit court[13] issued a Rule to Show Cause against BMS and set the matter for hearing on February 14, 2024.

On January 24, 2024, DHS filed a civil complaint in the Circuit Court of Kanawha County against Holistic, Shawn Blankenship, Julie Blankenship, Samantha Burgess, Dr. Ghali Bacha, George Grover, Alyssa Skeens, and Jessica Halstead alleging Medicaid fraud and overpayments totaling, at a collective minimum, $3,852,343.98.[14] In the Complaint, DHS alleged that these parties "willfully made, attempted to make, and/or caused to be made, certain claims for benefits, payments, or allowances" under the Medicaid program when they "knew, or reasonably should have known, such claims were false, fictitious or fraudulent, and thereby obtained payments which were ineligible for payment, constituting fraud under West Virginia Code § 9-7-6."[15]

---

[13] With the retirement of Judge Louis H. Bloom on June 20, 2023, the matter is now assigned to Judge Stephanie Abraham.

[14] The case was styled *West Virginia Department of Human Services v. Holistic, Inc., Shawn Blankenship, Julie Blankenship, Samantha Burgess (aka Samantha Shawver), Dr. Ghali Bacha (aka Dr Ghali Ibrahim-Bacha), George Grover, Alyssa Skeens, and Jessica Halstead*, Civil Action No. 24-C-60, and was assigned to Judge Tera Salango.

[15] DHS further alleges fraud in billing for services not rendered (Counts Two and Three); Causing submission of claims for fraudulent prescriptions (Count Four); Billing for obesity and tobacco-related services not rendered and/or not medically necessary (Count Five); Billing for urine drug screen (UDS) services not rendered and/or not medically necessary (Count Six); Duplicate billing (Count Seven); Billing for UDS services without required prior authorization (Count Eight); Billing for services not rendered and/or not medically necessary in conjunction with COVID-19 tests (Count Nine); Billing for services not rendered by Samantha Burgess (Count Ten); Billing for

13

Oral arguments in the instant case were held before this Court on February 7, 2024. Following those arguments, in a February 12, 2024, order, the parties were ordered to file supplemental briefing to address "whether the payments for services and/or rights to bill for services under the West Virginia Medicaid [p]rogram that were suspended in this action due to the pending fraud investigation constitute a property interest triggering due process concerns." Supplemental briefing on this issue was submitted by all parties. In the February 12, 2024, order, this Court determined that it had appellate jurisdiction over this matter but noted that "a detailed opinion . . . would follow."

## II.  STANDARD OF REVIEW

West Virginia Code § 16-1-22A(c) (2023)[16] provides for judicial review of contested cases and states that any party affected or aggrieved by a final decision of the agency (BMS) may seek judicial review of said decision by appealing to this Court, as provided by West Virginia Code § 29A-5-4, known as the State Administrative Procedures Act.

---

services not rendered by, and non-reimbursable services allegedly rendered by George Grover, Alyssa Skeens, and Jessica Halstead (Counts Eleven, Twelve, and Thirteen).

[16] West Virginia Code § 16-1-22A (2023) replaced West Virginia Code § 9-2-13 (2015), which was repealed by the West Virginia Legislature in 2023. West Virginia Code § 9-2-13(c) and (d) permitted judicial review of contested cases involving BMS by the filing of a petition in the Circuit Court of Kanawha County. West Virginia Code § 9-2-13(j) further allowed for the reversal, vacation, or modification of an agency decision only as outlined in West Virginia Code § 29A-5-4(g) of the Administrative Procedures Act.

14

The State Administrative Procedures Act provides:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the agency;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

West Virginia Code § 29A-5-4(g) (2021); *accord* West Virginia Code § 16-1-22a (2023) (stating that the exclusive remedy for judicial review of Board decisions is governed by West Virginia Code § 29A-5-4(g)).

Recently in *West Virginia HCR Manorcare Facilities v. West Virginia Dep't of Health & Hum. Res., Bureau for Med. Servs.,* No. 23-ICA-207, 2024 WL 2381903, at *6 (W. Va. Ct. App. May 23, 2024) (memorandum decision), this Court spoke regarding administrative decisions issued by BMS. In *HCR*, we stated that in reviewing decisions by BMS, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long the decision is supported by substantial evidence or by a rational basis." *Id.* (*citing* Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 444, 473 S.E.2d 483, 485 (1996)).

15

Because we must decide whether the hearing examiner was correct in its interpretation of the federal law at issue, our review is further guided by the Supreme Court of Appeals of West Virginia's ("SCAWV") recognition in syllabus point one of *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995), that "[w]here the issue on an appeal . . . is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." *See also Young v. State*, 241 W. Va. 489, 491, 826 S.E.2d 346, 348 (2019). With these standards in mind, we now consider the issues raised on appeal.

## III.   DISCUSSION

As a preliminary matter, we must dispense of Holistic's contention that this Court lacks jurisdiction to hear Petitioners' appeal. We disagree with Holistic, and, as noted in our February 12, 2024, order, we find that this Court has jurisdiction over the instant case. As cited above, West Virginia Code § 16-1-22A(c) provides that any party aggrieved by a BMS final decision or order may seek judicial review of that decision by filing an appeal with this Court. Accordingly, we find that this Court has jurisdiction to hear the instant case.[17]

---

[17] Likewise, in accordance with the statements made by counsel for Holistic during the February 7, 2024, oral argument, we acknowledge that if this Court has jurisdiction over the appeal of BMS' decisions, then the Circuit Court of Kanawha County lacks such jurisdiction.

16

On appeal, Petitioners raise two assignments of error. First, they argue that BMS' decision to suspend Medicaid payments to Petitioners was arbitrary and capricious in that BMS did not consider whether good cause existed, under 42 C.F.R. § 455.23(e), to not suspend said payments, in whole or in part. In order to properly address Petitioners' claims, we must look to 42 U.S.C. § 1396(a)(37)(B), which provides that state Medicaid programs must

> provide for procedures of prepayment and [post payment] claims review, including review of appropriate data with respect to the recipient and provider of a service and the nature of the service for which payment is claimed, to ensure the proper and efficient payment of claims and management of the program.

To further expound upon the requirements of appropriate procedures for review of Medicaid claims, we look to 42 C.F.R. § 455, which generally addresses the program integrity of Medicaid. Section 455.23 deals with the suspension of Medicaid payments to providers in cases of fraud. In section 455.23(a)(1), it is required that

> [t]he State Medicaid agency **must** suspend all Medicaid payments to a provider after the agency determines there is a credible allegation of fraud for which an investigation is pending under the Medicaid program against an individual or entity **unless the agency has good cause to not suspend payments or to suspend payment** only in part. (emphasis added).

Good cause is addressed in section 455.23(e), which provides that

[a] State **may** find that good cause exists not to suspend payments, or not to continue a payment suspension . . . against which there is an investigation of a credible allegation of fraud if any of the following are applicable:

(1) Law enforcement officials have specifically requested that a payment suspension not be imposed because such a payment suspension may compromise or jeopardize an investigation.
(2) Other available remedies implemented by the State more effectively or quickly protect Medicaid funds.
(3) The State determines, based upon the submission of written evidence by the individual or entity that is the subject of the payment suspension, that the suspension should be removed.
(4) Beneficiary access to items or services would be jeopardized by a payment suspension . . .
(5) Law enforcement declines to certify that a matter continues to be under investigation . . . ; and
(6) The State determines that payment suspension is not in the best interests of the Medicaid program. (emphasis added).

Generally, as to statutory construction, the SCAWV has held that ". . . significance and effect must, if possible, be given to every section, clause, word or part of the statute." Syl. Pt. 3, in part, *Meadows v. Wal-Mart Stores, Inc.*, 207 W. Va. 203, 530 S.E.2d 676 (1999). In *Nicewarner v. City of Morgantown*, 249 W. Va. 120, 894 S.E.2d 902 (2023), the SCAWV found that "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." *Id.* at Syl. Pt. 3, *citing* Syl. Pt. 5, *State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959). Moreover, it has long been the precedent of West Virginia that "[w]here the language of a statute is free from ambiguity, its plain meaning

18

is to be accepted and applied without resort to interpretation." Syl. Pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970).

Applying those principles to the instant case, we find that the language of 42 C.F.R. § 455.23(a)(1) requires, by use of the word "must," that the suspension of Medicaid payments is necessary upon a credible allegation of fraud, unless BMS finds "good cause" to either postpone the suspension in whole or in part. *Accord*, *VTCC, LLC v. Kimsey*, 477 F.Supp.3d 457, 465 (E.D. Va. 2020) (§ 455.23 *require[s]* the suspension of Medicaid payments, unless one of the regulatory good cause exceptions is found to exist. "A State *may* find that good cause exists not to suspend payments . . . .") *See also Border Area Mental Health Servs., Inc. v. Squier*, 2013 WL 12140453, at *2 (D.N.M. 2013) (noting that "good cause" is determined "at the discretion" of the state agency). Here, we find that section 455.23(a) is unambiguous and must be applied without interpretation.

BMS identifies that the current language of section 42 C.F.R. § 455.23(a) states that BMS has a mandatory legal obligation to suspend payments to Petitioners after determining that there was a "credible allegation of fraud" against them. However, section 455.23(a) was amended in February of 2011 as part of the Affordable Care Act ("ACA") (passed in March of 2010). In its Final Rule related to this amendment, the Office of the Inspector General for the Federal DHS ("OIG") noted "[w]e proposed to implement [§]6402(h)(2) of the ACA by modifying the existing §455.23(a) to make payment suspensions mandatory where an investigation of a credible allegation of fraud under the

19

Medicaid program exists." *Medicare, Medicaid, and Children's Health Insurance Programs, Additional Screening Requirements, Application Fees, Temporary Enrollment Moratoria, Payment Suspensions and Compliance Plans for Providers and Suppliers*, 76 FR 5862-01, 5932 (February 2, 2011). The OIG further stated, again in discussing its Final Rule and amendments to § 455.23, that "[c]onsistent with the new ACA provision, we also proposed to create several 'good cause' exceptions by which States *may* determine good cause exists not to suspend payments or to suspend payments only in part." *Id.* at 5933 (emphasis added).

Here, in its May 16, 2022, letters to Petitioners, BMS noted that it had received a credible allegation of fraud concerning Petitioners in that they knowingly billed for services never rendered. Further, the May 16, 2022, letter advised Petitioners that BMS "reviewed all good cause exceptions to payment suspension allowed by statute and determined none are applicable in this instance." Even though justification of a decision for no good cause is not required under 42 C.F.R. § 455.23, Andrew Pack, the Director of OPI (part of BMS) provided an Affidavit to Petitioners on August 25, 2022, detailing BMS' decision that no good cause existed.[18]

[18] In his Affidavit, Mr. Pack examined each of the six good cause exceptions set forth in § 455.23(e). As to the first exception, Mr. Pack noted that it was not applicable as MFCU lifted the request not to proceed with payment suspension. Likewise, the second and third exceptions are not applicable as, given the credible allegation of fraud against Petitioners, BMS determined that there are no other remedies (aside from payment suspension) to "effectively protect Medicaid funds" and because Petitioners had the opportunity to contest the suspension via a DDR and administrative hearing (both of which

In its brief, Holistic acknowledges, and the Individual Petitioners concur, that while the decision not to suspend "might be discretionary[,]" the actual performance of the evaluation of whether good cause exists is mandatory. We agree and find that 42 C.F.R. § 455.23 requires that BMS must suspend payments on a credible allegation of fraud unless the agency has good cause to not suspend payments. However, no matter how it is characterized by Petitioners, the record clearly establishes that BMS completed a good cause analysis and noted the same in its May 16, 2022, letters to Petitioners. Simply because Petitioners disagree with BMS' discretionary determination does not itself provide grounds for a finding that BMS' decision was arbitrary or capricious. Here, Petitioners simply do not meet their burden of establishing that BMS' determination of no good cause was an abuse of discretion.

Petitioners are critical of BMS for failing to include in its May 2, 2022, letter to Petitioners a statement that BMS found no good cause not to grant a suspension of Petitioners' Medicaid payments. However, such oversight was corrected in advance of the actual suspension of Petitioners' Medicaid payments. The record reflects that prior to

upheld the suspension). As to the fourth exception, it also is not applicable as BMS' Behavioral Health and Long-Term Care Services Program Director, Cynthia Parson, determined member access to care would not be jeopardized by suspending payments to Petitioners. The fifth exception is not applicable because law enforcement has certified that the investigation is "open and ongoing." Lastly, the sixth exception is also not applicable as BMS has determined that payment suspension is in the best interest of the Medicaid program given that credible allegations of fraud exist as to Petitioners.

21

suspension of Petitioners' Medicaid payments, BMS sent a second letter, dated May 16, 2022, to Petitioners. In the May 16, 2022, letter, Petitioners were specifically advised that BMS "reviewed all good cause exceptions to payment suspension allowed by statute and determined none are applicable in this instance."

Petitioners, citing *Alexandre v. Illinois Dep't of Healthcare & Fam. Servs.*, No. 20 C 6745, 2021 WL 4206792, at *9 (N.D.Ill. Sept. 15, 2021) (memorandum opinion and order), argue that Holistic's uninterrupted payment of earned funds under, and its continued participation in, the state's Medicaid program constitute property interests protected by the Due Process clause of the West Virginia Constitution. The Due Process clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty or property without due process of law." However, to establish a due process violation, a plaintiff must actually have been deprived of a liberty or property interest entitled to constitutional protections. *See generally Paul v. Davis*, 424 U.S. 693, 710-11 (1976).

In *Alexandre*, the United States District Court for the Northern District of Illinois found that a doctor had a due process right for prospective injunctive relief to challenge the suspension of her Medicaid payments for alleged fraud. In their briefs before this Court, Petitioners contend that the instant case is analogous to *Alexandre*. Like Dr. Alexandre, Petitioners suggest that they lacked detail of the allegations against them to

preclude a proper defense, which affected their due process. We disagree and find that the instant case is distinguishable from *Alexandre* for several reasons.

Dr. Alexandre's case involved suspension of her Medicaid payments for up to three years (capped by an Illinois statute providing a maximum of three years suspension of Medicaid payments while investigation continues) and she was provided no administrative hearing and was not provided with details of the particular billing irregularities supporting the suspension. Conversely, in the instant case, BMS suspended Petitioners' Medicaid payments on May 23, 2022, and, by November of 2023, BMS had filed a civil complaint against Petitioners specifically detailing their particular billing irregularities and had provided detailed information related to the investigation to Petitioners.

Here, again unlike *Alexandre*, Petitioners exercised their opportunity to appeal the BMS' suspension and were involved in an administrative appellate hearing related to their suspension in August of 2022, just four months following their suspension. Further, unlike Illinois in the *Alexandre* case, West Virginia does not have any statutes establishing a maximum time for suspension of Medicaid payments. With these distinctions we find *Alexandre* unpersuasive.

As to property rights, we find, with respect to payments for services already rendered, there is no property right implicated when the payments are the subject of a fraud

23

investigation. *See Pers. Care Prods. Inc. v. Hawkins*, 635 F.3d 155, 159 (5th Cir. 2011). Here, as Petitioners' payments were subject to a fraud investigation, we find no property right implicated. Similarly, even if we were to assume that continued participation in the Medicaid program constitutes a property interest for providers, the parties herein cannot establish that they were not afforded due process.[19] Below, the parties were provided with significant information related to the "credible allegation of fraud" against them. Petitioners herein were able to pursue a DDR review and an administrative hearing, in which Petitioners were provided the opportunity to state their case for BMS' alleged arbitrary and capricious suspension of their Medicaid payments, to no avail.

Before moving on to Petitioners' second assignment of error, we want to address the Individual Petitioners' statement, at page seven of their brief, that "four of the five [Individual Petitioners] were not even employed by Holistic during the time of the billing noted in the" SIU Report of Investigation Case Summary. While this statement may be true (the record is unclear), the same is not "literally impossible" (as alleged by the

---

[19] The Fourth Circuit recognizes a property interest in a provider's expectation of continued participation in the federal healthcare programs such as Medicare and Medicaid. *See Ram v. Heckler*, 792 F.2d 444 (4th Cir. 1986). However, the majority of jurisdictions (the First, Second, Fifth, Sixth, Ninth and Tenth Federal Circuit Courts) do not recognize such a property right, as providers are not the intended beneficiaries of the medical programs. As to the determination of Petitioners' property right for continued participation in the Medicaid program, we decline to address the same in this appeal as determination of this issue is not necessary to disposition of this appeal. Under the limited facts and circumstances of this case, even if we were to find that Petitioners had a property right in continued participation in the Medicaid program, we find that they were afforded sufficient and meaningful due process.

Individual Petitioners) and such fact is not dispositive of this matter. Here, both MFCU and BMS found and referenced fraudulent billing charges made by four out of the five Petitioners (excluding Sunshine Holstein) in its civil complaint filed in November of 2023. The SUI Report of Investigation Case Summary is but one of many sources relied upon by MFCU and BMS.[20]

Further, we must address Petitioners' inference in their arguments that the suspension of their Medicaid payments was permanent in nature. Such an assertion is simply not true. In the May 16, 2022, letter sent to Petitioners, BMS expressly notes that the suspension is temporary in nature and "will end upon the determination that there is insufficient evidence of fraud, or on the completion of legal proceeding(s) related to the alleged fraud by" Petitioners (the civil complaint filed by BMS against Petitioners in November of 2023). Moreover, we note that in 42 C.F.R. § 455.23(d)(3)(ii), it is required that "[o]n a quarterly basis, the State must request a certification from the [MFCU] or other law enforcement agency that any matter accepted on the basis of referral continues to be under investigation thus warranting continued suspension." BMS is not permitted to permanently suspend a provider's Medicaid payments, without the check of certification of a continued investigation. Here, under the facts and circumstances of this case, we find

---

[20] In the civil complaint against Petitioners, BMS alleges as follows: Samantha Burgess' fraud occurred in late October of 2020; George Grover's fraud occurred on early November of 2020 and December of 2021; Alyssa Skeens fraud occurred between March 13, 2020, and November 5, 2020; and Jessica Halstead's fraud occurred between of August 29, 2018, and October 6, 2020.

the same sufficient to protect the interests of Petitioners from unlimited permanent suspension of payments.

Also, in reviewing the claims at issue, we do not agree that Holistic had little or no information regarding the allegations of fraud against it. The record reflects that Shawn Blankenship, the president of Holistic, was aware of SIU's investigation into Holistic and its individual providers' billing practices in at least September of 2018. Mr. Blankenship participated in an interview with an SIU investigator and was asked pointed questions about the allegations of fraud at issue herein.

In addressing this assignment of error, it is the duty of this Court to consider the total implications of BMS' decisions, including implication on those who are served by the Medicaid program. We must temper the rights of those suspended with Medicaid's stated intent to decrease fraud rampant within the program. *See* West Virginia Code § 9-7-1 (Legislature notation of substantial sums of money having been lost due to overpayment of moneys to medical providers through abuse and fraud of reimbursement process). As Petitioners did not substantiate their argument that BMS was arbitrary and capricious in suspending Petitioners' Medicaid payments upon a credible allegation of fraud, we find no error.

In its second assignment of error, Petitioners argue that BMS acted arbitrarily and capriciously in failing to provide "adequate specific detail of the allegations in its pre-

26

suspension notices" to Petitioners. We again turn to 42 C.F.R. § 455.23(b)(2) for a description of what notices of suspension of Medicaid payments must include. Per this provision, the notice must include or address all of the following:

> (i) State that payments are being suspended in accordance with this provision.
> (ii) Set forth the general allegations as to the nature of the suspension action, but need not disclose any specific information concerning an ongoing investigation.
> (iii) State that the suspension is for a temporary period . . . and cite the circumstances under which the suspension will be terminated.
> (iv) Specify, when applicable, to which type or types of Medicaid claims or business units of a provider suspension is effective.
> (v) Inform the provider of the right to submit written evidence for consideration by State Medicaid Agency.
> (vi) Set forth the appliable State administrative appeals process and corresponding citations to State law.

Here, based on our review, we find that the May 16, 2022, suspension letter to Petitioners meets each of the six requirements of a notice of suspension of Medicaid payments. The May 16, 2022, letter identifies that payments are being suspended in conjunction by 42 C.F.R. § 455.23(c)(1) providing a general description of the allegations as an investigation of a credible allegation of fraud and concerning allegations of knowingly billing for services never rendered. Further, the May 16, 2022, letter advises that the suspension is temporary and will end upon determination of insufficient evidence of fraud or the completion of a legal proceeding(s) related to alleged fraud. Lastly, the May 16, 2022, letter contains information regarding which type of Medicaid payments are being suspended (Medicaid payments in whole) and provides information regarding the

27

administrative appeals process and the ability to submit written evidence to the State Medicaid Agency.

With adherence to the explicit requirements of 42 C.F.R. § 455.23(c)(1) completed by BMS in its May 16, 2022, letter, we find allegations set forth in this letter sufficient to put Holistic on notice. Further, we note that since this May 16, 2022, letter, Petitioners have received additional information from BMS including the SIU Report of Investigation Case Summary (identifying particular CPT codes and identifying improper billing procedures), a FBI search warrant application which specifically identifies the instances of Medicaid fraud perpetrated by Petitioners, and a civil Complaint that has been filed against Petitioners (excluding Sunshine Holstein) that details each allegation of fraud against each of the Petitioners (again, excluding Sunshine Holstein). Accordingly, we find no error.

We further note the decision of the Court of Appeals of Mississippi in *NSCH Rural Health Clinic v. Snyder*, 321 So.3d 565 (2020), in which that court found that a notice of suspension of medical payments including only general allegations and no specific allegations concerning the ongoing investigation was sufficient under 42 C.F.R. § 455.23(b). The *Snyder* court recognized, as this Court does, that to find otherwise would potentially undermine the ongoing criminal investigation against the provider.

## IV.     CONCLUSION

For the foregoing reasons, we affirm BMS' December 7, 2022, decision, and remand this matter for further proceedings only as it pertains to the lifting of the suspension of Medicaid payments of Sunshine Holstein.

Affirmed, in part, and remanded, in part, with instructions.